# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

Paul Gugger,

                Plaintiff,

v.

USAA Federal Savings Bank,

                Defendant.

Case No.: 17-cv-1518-AJB-AGS

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS (Doc. No. 4)**

Before the Court is Defendant USAA's motion to dismiss Plaintiff Paul Gugger's complaint. (Doc. No. 4.) The Court heard oral arguments on November 2, 2017, and took the matter under submission. Upon consideration of the motion and the parties' arguments in support and opposition, the Court **DENIES** USAA's motion to dismiss, and *sua sponte* **DISMISSES** Gugger's Consumer Credit Reporting Agencies Act claim.

## I.     BACKGROUND

Gugger filed his complaint, alleging USAA violated the Fair Credit Reporting Act, ("FCRA"), 15 U.S.C. § 1681, and the California Consumer Credit Reporting Agencies Act, ("CCRAA"), Cal. Civ. Code § 1785.25(f). The basis of Gugger's complaint arises from USAA's issuance of a form to Gugger regarding his account's debt. Specifically, USAA issued Gugger a Form 1099-C with code "G" marked. (Doc. No. 1-3 at 4.) According to Gugger, because USAA issued this form with code "G" marked, he believed it legally released him from any further obligation to pay the debt. (*Id*.) USAA then filed the Form 1099-C with the IRS, obligating Gugger to pay taxes on the debt—which he thought was

1

discharged. But, when Gugger received his consumer credit report, he discovered the debt was still being reported. (*Id.* at 2.)

Gugger sent a written dispute to Trans Union regarding the inaccurate debt. (*Id.* at 4.) Trans Union forwarded the dispute to USAA, but the debt was not removed. (*Id.*) Gugger then sent a second written dispute to Trans Union. (*Id.*) Again, Trans Union forwarded the dispute to USAA, but the debt remained. (*Id.*) Instead, both Trans Union and USAA verified the disputed information as accurate. (*Id.* at 5.)

Gugger now asserts the following claims: (1) USAA failed to conduct a reasonable investigation after receiving written disputes about Gugger's debt, as required under the FCRA, and (2) USAA failed to report accurate information breaching the CCRAA. (Doc. No. 1-3 at 6.) After reaching a settlement, (Doc. No. 13), the Court dismissed Trans Union with prejudice. (Doc. No. 24.) For the reasons set forth below, the Court **DENIES** USAA's motion to dismiss, and *sua sponte* **DISMISSES** the CCRAA claim.

## II. LEGAL STANDARDS

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In reviewing a motion to dismiss under Rule 12(b)(6), the Court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, legal conclusions cast in the form of factual allegations will not be taken as true. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998). A "motion to dismiss is not the appropriate procedural vehicle to test the merits of Plaintiff's complaint." *Walker v. City of Fresno*, No. 1:09cv1667, 2010 WL 3341861, at *4 (E.D. Cal. Aug. 23, 2010) (citing *Navarro*, 250 F.3d at 732).

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). To ensure credit reports are accurate, the FCRA imposes

certain duties on "furnishers," which are entities that provide credit information to consumer reporting agencies. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009). One such duty imposed on a furnisher is triggered when a furnisher receives notice of a dispute from a credit reporting agency, ("CRA"), stating the consumer disputes the information. *Id.* at 154; *see also* 15 U.S.C. § 1681s-2(b). Section 1681s-2(b) provides that, after receiving a notice of disputes, the furnisher shall:

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the [CRA] . . .;
> (C) report the result of the investigation to the [CRA];
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other [CRAs] to which the person furnished the information . . .; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation . . . (i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that information.

15 U.S.C. § 1681s-2(b)(1).

The CCRAA "limits the dissemination of a consumer's credit information." *McClain v. Octagon Plaza, LLC.*, 159 Cal. App. 4th 784, 800 (2008) (internal quotations omitted). Section 1785.25(f) requires furnishers who receive notice of a dispute to investigate the disputed information and review relevant information. Cal. Civ. Code § 1785.25(f); *Carvalho v. Equifax Info. Servs. LLC*, 629 F.3d 876, 888 (9th Cir. 2010). But, § 1785.25(f) is preempted by the FCRA. *See id.* at 888–89. ("Section 17825(f), however, is not expressly saved from preemption by the FCRA.").

### III. DISCUSSION

Gugger alleges that USAA violated the FCRA and the CCRAA. (Doc. No. 1.) Although Gugger does not bring a claim challenging the interpretation of Form 1099-C, USAA moved to dismiss Gugger's claims premised on the assertion that the Form 1099-C did not discharge Gugger's debt. (Doc. No. 4.) During oral arguments on November 2, 2017, much time was spent debating whether a Form 1099-C discharges debt. Thus, the

Court must first address Form 1099-C's applicability and will then address USAA's arguments in turn.

**A. 1099-C's Applicability**

The Internal Revenue Code requires a creditor discharging indebtedness to file an "information return on Form 1099-C with the Internal Revenue Service." 26 C.F.R. § 1.6050P-1(a). Whether or not an actual discharge of indebtedness has occurred, a "discharge of indebtedness is deemed to have occurred" for the sole purpose of reporting requirements. *Id.*

USAA argues the plain language of the IRS Form 1099-C sent to Gugger does not, alone, extinguish Gugger's debt. (Doc. No. 4 at 6.) USAA asserts the IRS Code section 1.6050P-1(a) requires creditors to file Form 1099-C even when the debt is not cancelled. (*Id.* at 7.) USAA relies on two IRS Information Letters explaining the IRS "does not view a Form 1099-C as an admission by the creditor that it has discharged the debt and can no longer pursue collection." (*Id.* at 8.) As additional evidence, USAA cites courts in other jurisdictions that have followed the IRS Information Letters and concluded that the mere filing of a Form 1099-C does not discharge debt. (*Id.* at 9.)

In opposition, Gugger argues USAA admitted to discharging Gugger's debt by selecting code "G" on the Form 1099-C. (Doc. No. 11 at 7.) Gugger cites to IRS Publication 4681 on the IRS website[1] that states code "G" discontinues the debt. (*Id.*) Further, Gugger argues the IRS Information Letters do not offer any opinion on USAA's selection of code "G." (*Id.* at 10.) Gugger states these letters are "vague, unconvincing, and misleading." (*Id.*)

In USAA's reply, it relies heavily on *F.D.I.C. v. Cashion* from the Fourth Circuit. (*See generally* Doc. No. 12.) Ruling on a summary judgment motion, the court held Form 1099-C was "not a means of accomplishing an actual discharge or debt," but, is instead a

---

[1] IRS, *Publication 4681 (2016), Canceled Debts, Foreclosures, Repossessions, and Abandonments* (last updated September 11, 2017), www.irs.gov/publications/p4681.

4

reporting obligation. *F.D.I.C. v. Cashion*, 720 F.3d 169, 179 (4th Cir. 2013). USAA argues the *Cashion* court's decision not to discuss whether certain codes were checked reveals that the codes are unimportant to Gugger's claims. (Doc. No. 12 at 3.)

At oral argument, USAA cited to *Mennes v. Capital One, N.A.* as the only federal court case that addresses the same issue under a motion to dismiss. *See Mennes v. Capital One, N.A.*, No. 13CV822BBC, 2014 WL 1767079, at *6 (W.D. Wis. May 5, 2014). The *Mennes* court granted Defendant's motion to dismiss as to Plaintiff's claim the Form 1099-C is evidence of debt cancellation. *Id*. Thus, USAA argues at the bare minimum, the Court should rule similarly and grant the motion to dismiss with leave to amend.

Examining applicable case law and the cited publication, the Court finds a split in authority as to the legal effect to issuing a Form 1099-C. *Compare Cashion*, 720 F.3d at 181 n.10 (affirming summary judgment against debtor offering only the Form 1099-C as evidence the debt was extinguished), *and Ware v. Bank of America Corp.*, 9 F.Supp.3d 1329, 1341 (2014) (affirming summary judgment against debtor for presenting no legal authority supporting the theory a 1099-C discharges debt), *with In re Reed*, 492 B.R. 261, 273 (Bankr. E.D. Tenn. 2013) (holding a creditors issuance of a 1099-C reflects a discharge of debt). But, most of these cases are decided on summary judgment and after parties have had the benefit of discovery. *See Cashion*, 720 F.3d at 181 n.10. Also, none of these cases discuss code "G's" effect on discharge.

Here, Gugger asserts his claims on the pleadings without the opportunity to conduct discovery, which favors denying USAA's motion to dismiss. *Habetmariam v. Vida Capital Group, LLC*, No. 216CV01189MCEGGH, 2017 WL 627404, at *3 (E.D. Cal. Feb. 14, 2017) (denying defendant's motion to dismiss because a Form 1099-C in addition to supporting evidence could plausibly extinguish debt and the parties should have the benefit of discovery). In addition, some authority suggests "a Form 1099-C may itself be prima facie evidence for cancellation of debt." *Id.* (citing *Amtrust Bank v. Fossett*, 224 P.3d 935, 936–37 (Ariz. Ct. App. 2009)).

Furthermore, the 2015 Form 1099-C section "Instructions for Debtor," box 6 states code "G" means "[d]ecision or policy to discontinue collection."[2] The Form 1099-C section "Instructions for Creditor," also references 2015 Instructions for Forms 1099-C. These instructions state a creditor enters code "G" in box 6 to indicate "[a] discharge of indebtedness because of a decision or a defined policy of the creditor to discontinue collection activity and cancel the debt."[3] At the pleading stage, the Court is required to accept all material allegations in the complaint as true. Thus, the Court finds that Gugger's argument that code "G" indicates a discharge of debt under the plain language of the 2015 Form 1099-C is plausible.

At this stage of the proceedings, the Court is unable to rely on *Cashion*, as this case is not before the court on a motion for summary judgment, but on a motion to dismiss. Additionally, the court in *Cashion* was "careful to note the specific circumstances" of the case and its narrow holding. *Cashion,* 720 F.3d at 181. The *Cashion* court emphasized "[i]n another case, where a properly authenticated Form 1099-C is introduced into evidence along with other circumstantial evidence of cancellation of the debt, the Form 1099-C could be properly considered by the trier of fact under the totality of the circumstances on the ultimate issue of whether the debt in question was, in fact, cancelled." *Id*. Thus, it is possible that Gugger can discover evidence indicating his debt was actually cancelled.

Further, the Court is also unable to rely on *Mennes* because *Mennes* relies in part on the IRS Information Letters. While the IRS Information Letters are persuasive, they go to the merits of the claim to negate Gugger's allegations. At this stage, the Court is bound to draw reasonable inferences in Gugger's favor and accept his allegations as true. *Cahill*, 250 F.3d at 732. So while these letters may be relevant at some time in the future, these

---

[2] Department of Treasury, IRS, *Form 1099-C* (2015), www.irs.gov/pub/irs-prior/i1099c--2015.pdf.

[3] Department of Treasury, IRS, *2015 Instructions for Forms 1099-A and 1099-C* (2015), www.irs.gov/pub/irs-prior/i1099ac--2015.pdf.

6

letters are inappropriate to resolve in a motion to dismiss. Therefore, the Court will not engage in the interpretation and determination as to the authority of the IRS Information Letters at this stage.

Assuming all reasonable inferences in favor of the nonmoving party, the Court finds Gugger has sufficiently stated a complaint. The Court questions whether Gugger will prevail on a motion for summary judgment or at trial. However, the Court is also mindful that the basis of his complaint is whether an investigation was conducted and if his credit is being accurately reported, and the issue of whether his debt was discharged or not is part of that analysis—not its own cause of action. Accordingly, USAA's motion to dismiss on grounds the Form 1099-C did not discharge Gugger's debt is **DENIED**.

**B. Fair Credit Reporting Act—1681s-2(b)**

When a consumer disputes information on their credit report, the FCRA requires the furnisher to conduct an investigation as to the disputed information and take steps to ensure that any errors are corrected. *Gorman*, 584 F.3d at 1154; *see also* 15 U.S.C. § 1681s-2(b). This duty arises "only after the furnisher receives notices of a dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)." *Id.*

Here, the complaint alleges Gugger sent two written disputes to Tran Union, the CRA, which it forwarded to USAA, the furnisher. (Doc. No. 1-3 at 4.) Both USAA and Trans Union verified the information as accurate and refused to remove the balance on Gugger's account. (*Id.*) Gugger provides little factual content to support the allegation that USAA willfully failed to review all relevant information. (*Id.* at 6.) Although the court cannot assume facts Gugger has not alleged, here, Gugger's argument relies on USAA's failure to act. USAA, not Gugger, would be in the best position to engage in this factual inquiry as USAA would have any documents—or lack thereof—regarding any investigation. Thus, the Court finds discovery is needed to fairly litigate this issue. *See Habetmariam*, 2017 WL 627404, at *3.

### C. California Consumer Credit Reporting Agencies Act

Gugger alleges USAA violated Cal. Civ. Code § 1785.25(f) for failing to report accurate information to a CRA. (Doc. No. 15 at 7.) However, the FCRA preempts § 1785.25(f). *Carvalho*, 629 F.3d at 888–89.

A district court may dismiss a cause of action *sua sponte* even if a party does not make a formal motion to dismiss. *Shoop v. Deutsche Bank Nat. Trust Co.*, 465 Fed. App'x. 646, 647 (9th Cir. 2012). The court, acting on its own, may note the inadequacy of the complaint and dismiss it for failure to state a claim. *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (internal quotations omitted).

Since Gugger's § 1785.25(f) claim is preempted, USAA did not address this issue in its motion to dismiss. Additionally, Gugger's counsel did not object to the Court's findings on preemption during oral arguments. Thus, the Court *sua sponte* **DISMISSES** Gugger's CCRAA claim.

### IV. CONCLUSION

For the reasons stated, the Court **DENIES** USAA's motion to dismiss, (Doc. No. 4), and *sua sponte* **DISMISSES** the CCRAA claim.

**IT IS SO ORDERED.**

Dated: November 17, 2017

Hon. Anthony J. Battaglia
United States District Judge